344 So.2d 767 (1977)
In re Etta Sorrell BRASWELL et al.
v.
J. B. MONEY, etc., et al.
Ex parte Etta Sorrell Braswell et al.
SC 2094.
Supreme Court of Alabama.
April 15, 1977.
C. Neal Pope, Phenix City, John B. Crawley, for Crawley & Ford, Troy, William H. Johnston, for Johnston & Johnston, Huntsville, Truman Hobbs, for Hobbs, Copeland, Franco & Screws, Montgomery, for petitioners.
Oliver W. Brantley, for Brantley & Calhoun, Troy, Walter R. Byars, for Steiner, Crum & Baker, Montgomery, opposed.
EMBRY, Justice.
In this case, on petition for the Writ of Mandamus, we ordered an answer filed in order to review the refusal of the trial court to grant a motion for change of venue in the contest of the will of Anise J. Sorrell. *768 We find the evidence in support of the motion insufficient to show an abuse of discretion by the trial court in denying a change of venue and therefore deny the Writ of Mandamus.
Petitioners, Etta Sorrell Braswell, Lois Sorrell Phillips, and Joseph W. Burt, filed an action to contest the last will and testament of Anise J. Sorrell, and a codicil to that will. Proponents of the will are J. B. Money, Annette Colley, Louise Scott, Larry Johnston, Anise Johnston, Helen Johnston, Troy State University, Lurleen B. Wallace Memorial Cancer Hospital Fund, Inc., and Union Bank and Trust Company of Montgomery, Inc.
It is alleged that Anise and her husband, W. J. Sorrell, while living, entered into an agreement whereby W. J. promised to leave to Anise one-half of his entire estate, at his death, if Anise would promise to leave that portion of the estate to petitioners at her death. Anise executed a will in keeping with the agreement, but later executed a codicil wherein the contested portion of the estate was left to Troy State University, The Lurleen Wallace Memorial Cancer Hospital Fund, and members of the J. O. Colley, Jr., family. The size of the estate is estimated at $4,700,000.
The action was set for trial in the Circuit Court of Pike County. Before trial date, petitioners filed their motion for change of venue which was denied after a hearing. This Court granted a stay of the proceedings pending final determination as to the writ of mandamus to review the ruling on the motion for change of venue.
The motion for change of venue was pursuant to the authority of Code of Ala., Tit. 7, § 65, on the basis that contestants could not have a fair and impartial trial in Pike County. It was based on two grounds: (1) local prejudice, and (2) influence over the public mind by the proponents of the will.
At the hearing on the motion, petitioners presented testimony and evidence which they contend was sufficient to support the conclusion that these two factors existed in this action. This being the case, they say, the trial court abused its discretion when it denied the motion for change of venue. We disagree.
Title 7, § 65, Code of Ala. (1940), states:
"Either party to a civil suit may, at any time before final trial, move the court to change the venue, making affidavit that for causes set forth, he cannot have a fair and impartial trial in the county where the suit is pending. * * *"
As a standard against which this statute might be judged, petitioners quote from 77 Am.Jur.2d, Venue, § 59 (1975);
"* * * it is sufficient if there are existent influential factors from which probable partiality in substantial degree, upon the part of a substantial number of persons, and such as to presage appreciable and extensive influence, may be reasonably inferred. * * *"
To satisfy the requirement of Tit. 7, § 65, Code, that it be shown that one cannot have a fair and impartial trial, and to satisfy the above standard, petitioners presented the following evidence to support their grounds for change of venue:
A. Local prejudice
Troy State University, which stands to benefit considerably, should petitioners lose the will contest, is located in the City of Troy, Pike County, site of the trial. It is alleged that Troy State exercises pervasive influence over the public mind, and, due to this, the public's interest in the contest is and will be adverse to that of petitioner's interest. To support this proposition, the following evidence is offered: Troy State University is the area's leading industry and greatest economic force. It is the largest employer in Pike County, employing approximately 300 persons. There are approximately 900 Troy State alumni in Pike County, including the judge in whose court this action is to be tried. Each year the Troy Chamber of Commerce sponsors a TSU Appreciation Day, in recognition of the contributions made by, and the favorable and extensive influence of TSU in the community. Appreciation Day involves the participation of many members of the community. *769 A "number" of county residents contribute money to TSU.
Testimony of the Clerk of the Circuit Court of Pike County was presented. He produced the venire list for the term of court for which the will contest was originally docketed. It contained 119 names, including those not summoned for various reasons and those which might be excused. Forty-five persons listed reside in Troy, and ten persons on the list are employed by Troy State University. Testimony of various city officials and administrative officials of TSU was taken. The record shows six of these witnesses stated they saw no reason why contestants could not obtain a fair and impartial trial. Only two witnesses testified to the contrary: John B. Crawley, an attorney for the contestants, and, by oral deposition J. W. Burt one of the contestants.
This evidence must be analyzed both in light of meager Alabama case law and generally accepted standards on the subject of change of venue in civil actions.
The only Alabama case concerning local prejudice of the character asserted by petitioners, based on the above evidence, is Ex parte Morrow, 259 Ala. 250, 66 So.2d 130 (1953). This case involved a will contest in which a change of venue was granted after two mistrials occurred, and is so distinguishable on its facts as to be inapplicable in the instant case.
We recognize that local prejudice which tends to prevent a fair and impartial trial is ground for change of venue. In 92 C.J.S. Venue § 143, p. 853, it is stated:
"* * * Generally speaking, the prejudice must exist throughout the county, and not in the particular locality, but if prejudice in a particular locality exists and the number of jurors from that locality is so proportionately large that an impartial jury cannot be selected, a change of venue may be granted. That the people of the community are generally interested in the question involved is not sufficient, but it has been held that venue may be changed if the residents of the community are interested in the event, to such an extent as to prevent a fair trial. * * *"
The question then is, whether petitioners have spread on the record facts and circumstances of such character as to create a reasonable belief that a fair and impartial trial cannot be obtained in Pike County. We think not.
First, there is not sufficient evidence to prove local prejudice. To say that Troy State University has an impact on the City of Troy and its citizens is to elucidate the obvious. However, to conclude from this that TSU exercises pervasive influence over the public mind, of such a nature to create prejudice adverse to petitioners' interest, is error. There is no evidence here that the trial of this case has created widespread interest and comment in the community, nor that opinions have been formed concerning the case. Indeed, as we have noted, petitioners produced six witnesses, four of whom are employed by TSU, who testified to the reasonable belief that a fair and impartial trial could be had. The only testimony to the contrary was from a contestant-petitioner and an attorney for petitioners.
Second, petitioners' evidence regarding the potential number of "prejudiced" jurors falls short of its intended goal. The venire list produced was for the entire term of court for which this case was docketed, and consisted of 119 names, not all of whom will appear for duty. We cannot guess, or surmise, how many of the 45 residents of Troy and 10 employees of TSU will actually be on the venire for selection as petit jury. Since there is insufficient evidence as to general local prejudice, the fact that 45 Troy residents' names are on the venire is not cause for alarm. Assuming, without deciding, that TSU employees might have a more direct interest in the outcome, we scrutinize this aspect more closely. Does the presence of 10 persons employed by TSU on a 119-member venire mandate change of venue in light of contestants' right to challenge? We find no statistical evidence that the venire was so disproportionately weighted with TSU employees as *770 to indicate the possibility of probable prejudice.
B. Influence of proponents of will
The evidence bearing on this aspect of the case is centered on Dr. J. O. Colley, Jr., and his family, all of whom stand to inherit substantial sums should the will contest fail. It is Dr. Colley who petitioners allege exerted undue influence over the mind of Anise Sorrell when she executed the codicil to her will. Colley is a physician engaged in an active practice in Troy and in Pike County for the past 40 years. His files of active patients currently indebted to him number 5,000. He is the college physician, serves on the Boards of Directors of a Children's Home and the Farmers and Merchants Bank of Troy, and is the administrator for the Pike County Nursing Home. A building on the TSU campus is named in his honor. Petitioners contend that because Colley is such a prominent, influential figure in the community, because so many residents of the city and county owe him money for medical services, and because he and his family are so well liked and respected in the community, there will exist among the jury favorable sentiment in his behalf.
The mere fact that Dr. Colley is prominent and holds official positions in the community does not justify the inference that an impartial trial cannot be had. In Hattemer v. Davis, 206 Ala. 613, 91 So. 321 (1921), plaintiff, a nonresident of the county of trial sued a prominent resident businessman. The defendant did a large business, exercised considerable influence, and was a member of the County Board of Revenue. Plaintiff moved for change of venue, it was denied, and this Court upheld the denial. In Ex parte State ex rel. Ingram Land Co., 208 Ala. 28, 93 So. 820 (1922), we upheld denial of motion for change of venue based on the same grounds as in Hattemer, that was evidenced by even more extreme examples of probable prejudice: defendant's business partner was active in inducing favorable sentiment with the jury in behalf of defendant, and four jurors (the case ended in mistrial) stated that defendant had done so much for the county that no jury would find against her. Although the movant in Ingram may have been held to a stricter standard than might be required today, petitioners in the instant case have failed to present sufficient evidence to support their contentions regarding Dr. Colley. A person is not to be penalized because he enjoys a good reputation and high standing in the community. This alone is not enough to warrant a change of venue. Other jurisdictions are in accord. See Henson v. Tom, 473 S.W.2d 258 (C.C.A.Tex.1971); South Carolina Electric & Gas Co. v. Aetna Insurance Co., 235 S.C. 147, 110 S.E.2d 165 (1959); 77 Am.Jur.2d, Venue, § 59.
In this case, petitioners have failed to present sufficient evidence to create a reasonable belief that probable prejudice exists in the county of situs of trial of their action. We find no abuse of discretion in the trial court's denial of the motion for change of venue. Ex parte Morrow, supra.
WRIT DENIED.
BLOODWORTH and ALMON, JJ., and SIMMONS, R. C. J. (Retired Circuit Judge sitting by designation of the Chief Justice), concur.
JONES, J., concurs specially.
JONES, Justice, concurring in the result:
On preliminary consideration of this case, after studying briefs and hearing oral arguments, I was of the opinion that the order denying plaintiff's motion for change of venue should be reversed. After a more detailed study of the record, along with a clearer recognition of our scope of review, I have changed my mind. I concur in the result to deny the petition for the writ of mandamus.
An explanation of my concurrence in the result only (rather than in the opinion) will also explain the reasons for changing my view on the merits of the appeal. It is not within our scope of review to test the evidence against our independent judgment as to whether the contestants can obtain a fair and impartial trial in Pike County, the situs *771 of Troy State Universitya major beneficiary under the will.
If I were the trier of this issue, I would not hesitate to grant the motionnot only in the interest of justice, but also in the interest of the appearance of justice. The overview of the total atmosphere which necessarily pervades this trial, its issues, and its parties, are ample to support such a holding. But our role as appellate judges, as contrasted with that of the trial judge, does not include this prerogative.
This Court should not substitute its judgment for that of the trial Court. While the Court's opinion, in the opening and closing paragraphs, makes a passing reference to the trial Court's discretion, its rationale for upholding the denial of the "change of venue" motion is based on its independent evaluation of the evidence. Witness, for example, the following paragraph under subsection "A":
"The question then is, whether petitioners have spread on the record facts and circumstances of such character as to create a reasonable belief that a fair and impartial trial cannot be obtained in Pike County. We think not."
This theme is carried through in the first sentence in each of the next two paragraphs.
Instead, I believe we are confined to this question: Is the evidence of prejudice so compelling that the trial Court was bound to reach a single conclusion: the plaintiff cannot obtain a fair and impartial trial?
To be sure, this is a hard test and one that renders the ruling below virtually unreviewable; but it is the test established by our cases.
A careful study of these cases discloses that trial judges have tended to view these motions for change of venue as an attack on the integrity of local jurors, and the trial courts' reticence to grant such motions often reflects a response to the effect, "How dare you place in question the fairness and impartiality of the good people of this community?" While I do not approve this defensive reaction on the part of the trial bench, and I would continue to admonish the bench to employ objective standards within the spirit of the statute (Tit. 7, § 65, Code) in testing these motions for change of venue, I would not weaken the discretionary power of the trial courts in this regard, nor would I change our scope of review.
Although the evidence before the trial Judge in the instant case, in my opinion, was abundantly sufficient to sustain a ruling in favor of the motion to transfer, a contrary ruling does not mandate a reversal. A detailed review of the evidence would serve no purpose. Suffice it to say that the affidavits of the parties and their attorney were the only evidence of specific prejudice proffered in support of the motion. This, along with the overview-type data (size and general influence of the university and its economic and psychological impact), would support a ruling granting the motion (and I personally believe the appearance of justice would have been served thereby); but it falls short of legally compelling such ruling.
It is on these grounds and for the reasons expressed that I concur in the result to deny the writ.